## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| FAITH A. BURDICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-01293-JAR |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of

Social Security's final decision denying Plaintiff Faith A. Burdick's application for disability

insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of

the Social Security Act. For the reasons discussed below, the decision of the Commissioner will

be affirmed.

## I.      PROCEDURAL BACKGROUND

On February 12, 2018, Plaintiff protectively filed applications for DIB and SSI with an

alleged disability onset date of January 1, 2018. (Tr. at 14, 182, 189). Plaintiff claimed disability

due to scoliosis, kidney stones, hypertension, depression, and anxiety. (*Id.* at 235). After her

applications were initially denied on June 4, 2018, Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"). On August 21, 2019, ALJ Janice Barnes-Williams held a

hearing via video, with Plaintiff testifying from Creve Coeur, Missouri. (Doc. 19-1 at ¶¶ 88-89).

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the Defendant in this suit.

Plaintiff was represented by counsel at the hearing, and the ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE").

After considering the testimony and record evidence, the ALJ issued an unfavorable decision on November 15, 2019. (*Id.* at ¶ 134; Tr. at 14-24). On July 28, 2020, the Appeals Council of the Social Security Administration ("SSA") denied Plaintiff's request for review. (Tr. at 1-3). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000). Plaintiff filed this appeal on September 22, 2020. (Doc. 1). The Commissioner filed an Answer on March 18, 2021. (Doc. 11). Thereafter, Plaintiff filed a Brief in Support of the Complaint (Doc. 19) and the Commissioner filed a Brief in Support of the Answer (Doc. 24).

## II.    FACTS

This Court adopts Plaintiff's Statement of Uncontroverted Material Facts (Doc. 19-1) to the extent they are admitted by the Commissioner. (Doc. 24-1). These statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

## III.    LEGAL STANDARD

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citation omitted). The Court defers heavily to the findings and conclusions of the SSA. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citation omitted). But the Court must also "take into account record evidence that fairly detracts from the

ALJ's decision." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (citation omitted). This Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided differently. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). In other words, this Court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

Under the SSA regulations, an individual is disabled if they have an inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The SSA has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c)*.* If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the regulations ("Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history, and the process is complete.

If the claimant does not have an impairment which meets or equals a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. §§ 404.945, 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his or her impairments. *See generally* S.S.R. 96–8p, 1996 WL 374184, at *2 (July 2, 1996). At step four, the ALJ must determine whether, given the RFC, the claimant can return to his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Perks v. Astrue*, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he or she is not disabled. If not, the ALJ proceeds to step five to determine whether the claimant is able to make an adjustment to other work in light of his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he or she is disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Through step four, the burden remains with the claimant to prove he or she is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform jobs existing in significant numbers within the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004).

## IV.    DECISION OF THE ALJ

After the alleged disability onset date, Plaintiff worked approximately 20 hours per week as a Stocker at Target. (Tr. at 39). Based on Plaintiff's earnings record, the ALJ determined at step one that this work did not rise to the level of substantial gainful activity. (*Id.* at 16). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc

4

disease of the lumbar and thoracic spine with radiculopathy and scoliosis; mild asthma; obesity; fibromyalgia; generalized anxiety disorder; and major depressive disorder. (*Id.* at 17). The ALJ considered Plaintiff's other impairments but determined that her history of kidney stones and hypertension were non-severe and had "no more than a minimal effect on [Plaintiff's] ability to perform basic work activities." (*Id.*). The ALJ proceeded to conclude that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (*Id.*). At the hearing, Plaintiff's counsel explicitly declined to contend that any of Plaintiff's impairments met or equaled a Listing. (*Id.* at 37).

Based on the medical record before her and Plaintiff's hearing testimony, the ALJ assessed Plaintiff's RFC as only permitting light work with the following limitations:

> [Plaintiff] has the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to 4 hours in an 8-hour workday; and [sit up to] 6 hours in an 8-hour workday. She needs the opportunity to alternate between sitting and standing every 30 minutes for a 3 to 5 minute period to adjust positions without leaving the workstation. She can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, or crawl. She must avoid exposure to extreme cold weather, excessive vibration and unprotected heights. She must avoid overhead reaching bilaterally, but can frequently reach in all other directions. She may be exposed to no more than frequent irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. She should also avoid extreme heat. She can concentrate, persist, and remain on pace, and adapt to simple, routine, repetitive tasks, which may require detailed instructions but do not involve complex tasks. She can concentrate, persist, and stay on task and pace to adapt to work in an environment free of fast-paced production requirements that involve only simple, work-related decisions with few, if any, workplace changes. (*Id.* at 18-19).

Plaintiff had past relevant work as Security Guard and Customer Service Clerk, but the ALJ determined that Plaintiff could no longer perform these jobs given the RFC and based on the VE's answers to hypothetical questions. (*Id.* at 23). Accordingly, the ALJ proceeded to step five. Considering Plaintiff's age, education, work experience, and RFC, and relying on the VE's testimony, the ALJ concluded that there are jobs existing in significant numbers in the national

economy which Plaintiff can perform. (*Id.* at 23-24). Specifically, and in accordance with the Dictionary of Occupational Titles ("DOT"), the ALJ determined that Plaintiff would be able to perform the duties of a Router I, Retail Price Marker, and Electrical Assembler. (*Id.*). Thus, the ALJ found Plaintiff was not disabled. (*Id.* at 24).

## V.   PLAINTIFF'S MEDICAL RECORDS AND PERSONAL HISTORY

At the time of her hearing, Plaintiff was 54 years old and working for 20 hours per week as a Stocker at Target. (*Id.* at 38-39; Doc. 19-1 at ¶¶ 93-94). She lived alone in an apartment which required her to climb one level of stairs, and occasionally visited her son, mother, and chiropractor. (*Id.* at 39-40; Doc. 19-1 at ¶¶ 95, 97). She drove 45 minutes to attend the hearing and indicated that she drives approximately five days per week. (*Id.*; Doc. 19-1 at ¶¶ 94, 96). Plaintiff took care of her pet cat, occasionally cooks for company, does her laundry, and handles her own finances. (*Id.* at 56-59). Plaintiff also drove 45 minutes each Wednesday morning to visit her granddaughter. (*Id.* at 51; Doc. 19-1 at ¶ 116). Plaintiff's hobbies included reading, watching television, painting, and photography. (*Id.* at 255).

Plaintiff also indicated, however, that she experienced substantial challenges performing certain tasks, stating: "I can't even clean my house. If I do my kitchen and my living room, and you know, sweep and mop and vacuum just my kitchen and living room, I'm down for the next day or two, because I can't do nothing after that. And I have to sit down every half hour while I'm doing it, because it's too much for me. Even loading my dishwasher kills my back." (*Id.* at 50, 253). When prompted by the ALJ to describe how her impairments limit her ability to function, Plaintiff expressed that her "back is just screaming" soon after she starts working and "when you hurt like that, you can't concentrate [ ] very well." (*Id.* at 48; Doc. 19-1 at ¶ 110).

6

The medical records available to the ALJ begin in June 2017, before the alleged onset date of disability. Dr. David Peaco, a Missouri Licensed Psychologist, performed a consultative psychological evaluation in May 2018. (*Id.* at 414-418). Dr. Peaco diagnosed generalized anxiety disorder and major depression, finding that Plaintiff's ability to understand and remember simple instructions and persistence in completing tasks are "moderately impaired" but her concentration and social functioning are "unimpaired." (*Id.* at 416). Dr. Peaco concluded that Plaintiff's capacity to function effectively and "cope with the world around her is moderately impaired due to her anxiety, panic attacks, and the death of her son." (*Id.*)

Dr. Mara Horowitz performed a consultative examination and submitted a medical report dated May 18, 2018 diagnosing Plaintiff with scoliosis, depression, anxiety, degenerative disk disease, hypertension, and obesity. (*Id.* at 419-428). Dr. Horowitz also obtained range of motion values measuring Plaintiff's physical limitations and noted that Plaintiff "does indeed have a large S-curve to her thoracic and lumbosacral spine on physical examination." (*Id.* at 422). Plaintiff has submitted medical source statements from treating physicians Dr. Daniel Jablonski, a chiropractor (*Id.* at 429-432), and Dr. Chad Smith, her primary care physician. (*Id.* at 450-53). Each of these medical source statements identifies the number of hours the applicable physician believes Plaintiff can work, stand, and sit, among other assessments. Finally, the ALJ had access to various medical records from SSM Healthcare, Mercy Chiropractic & Acupuncture, and Mercy Hospital. (*Id.* at 372-413; 433-449).

## VI.    DISCUSSION

Plaintiff argues that the ALJ failed to evaluate her symptoms, primarily pain, in accordance with 20 C.F.R. § 404.1529. This regulation provides that in assessing disability the SSA will "consider all your symptoms, including pain, and the extent to which your symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence." Within this broad contention, Plaintiff appears to make four specific arguments. First, the ALJ did not address Plaintiff's need to use a heating pad and lumbar support pillow while working. Second, the ALJ failed to address Plaintiff's chronic pain and observations in the medical record demonstrating muscle spasms and limited mobility. Third, the ALJ did not discuss the side effects of Plaintiff's medication. Fourth, the ALJ improperly discounted Plaintiff's assessment of the severity of her symptoms based on Plaintiff's ability to perform basic household chores. This Court will address each argument while also generally considering whether the ALJ's decision is supported by substantial evidence in the record as a whole.[2]

Much of Plaintiff's argument turns on her subjective description of the severity of her symptoms. In the Eighth Circuit, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Courts generally consider the five *Polaski* factors in making such determinations: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529. Critically, an ALJ is "not required to discuss each *Polaski* factor." *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (citation omitted). Plaintiff's four arguments essentially amount to contentions that the ALJ failed to consider certain of the *Polaski* factors. The Court finds in each instance, however, that the ALJ properly evaluated the full record before generally concluding that Plaintiff's "statements

---

[2] The Court notes, as accurately highlighted by the Commissioner (Doc. 24 at 5 n.1), that Plaintiff's brief entirely concerns her physical impairments and does not address her diagnosed anxiety and depression. On these issues, the ALJ determined that Plaintiff "has received conservative and fairly minimal treatment for depression and anxiety" and the RFC's limitation to "simple, routine, repetitive tasks and simple work-related decisions . . . addresse[s] [Plaintiff's] alleged psychological symptoms." (Tr. at 21). The Court holds that this finding is clearly supported by substantial evidence in the record as a whole.

concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 19). The Court further notes that the ALJ specifically cited 20 C.F.R. § 404.1529 and SSR 16-3p before acknowledging her consideration of the objective medical evidence, medical opinions, prior administrative medical findings, and other evidence in the record. (*Id.*).

#### Plaintiff's Use of Heating Pad and Lumbar Support

At the hearing, Plaintiff testified that she frequently uses a heating pad which covers her entire back to relieve pain. (*Id.* at 55; Doc. 19-1 at ¶ 112). Upon questioning from Plaintiff's counsel, the VE testified that use of a heating pad "would have to be an accommodation" and "most of these work stations really aren't . . . set up to plug in a heating pad." (*Id.* at 66). Plaintiff contends that the ALJ's analysis included "no discussion of the Plaintiff's testimony that she would have to use a heating pad at work just like she would when doing her activities of daily living." (Doc. 19 at 10). The Commissioner responds that Plaintiff "herself testified that she used her heating pad at home when she returned from work, and that her job did not allow her to lie down at work." (Doc. 24 at 12).

It is Plaintiff's burden to establish the medical need for an assistive device. *Williams v. Saul*, No. 4:19-CV-2332-NCC, 2020 WL 5814479, at *10 (E.D. Mo. Sept. 30, 2020). The ALJ carefully reviewed Plaintiff's medical records and determined that her back pain is "less limiting than she alleged and does not preclude the performance of fulltime work." (Tr. at 19). The ALJ specifically described it as "quite notable that [Plaintiff] continues to work 20 hours a week at Target as a stocker." (*Id.* at 21). This analysis is consistent with SSA regulations and applicable precedent. *See* 20 C.F.R. 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Goff v. Barnhart*,

421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity.").

As the Commissioner argues, Plaintiff does not have access to a heating pad or lumbar support while working at Target. The Court does not believe that the ALJ was required to include use of a heating pad and lumbar support in the RFC when Plaintiff currently works 20 hours per week without such accommodations. *See Rhonda Sue v. Berryhill*, No. 4:18-CV-1292 JMB, 2019 WL 1491640, at *8 (E.D. Mo. Apr. 4, 2019) (citation omitted) ("At most, the ALJ's silence with respect to plaintiff's testimony that she needed to lie down with a heating pad amounts to a mere deficiency in the ALJ's opinion-writing technique and does not require this Court to set aside a finding that is supported by substantial evidence.").

Plaintiff's Chronic Pain and Severity of Impairments

Plaintiff argues that the ALJ did not address Plaintiff's chronic pain symptoms and ignored important observations from treating physicians contradictory to the ALJ's assessment of fairly routine findings. The Commissioner responds that the ALJ "pointed to objective evidence that failed to support Plaintiff's claims of ongoing physical disability during the relevant period." (Doc. 24 at 6). For the multiple reasons discussed below, the Court finds that the ALJ properly evaluated Plaintiff's chronic pain and the assessment of the objective medical records was supported by substantial evidence in the record as a whole.

First, the ALJ accurately determined that Plaintiff's back pain "has been managed conservatively by [Plaintiff's] primary care physician, who has prescribed Flexeril and Naproxen and encouraged use of over the counter pain relievers," and Plaintiff "has not been considered a surgical candidate." (Tr. at 19-20). *See Ostmann v. Massanari*, 201 F. Supp. 2d 995, 1011 (E.D. Mo. 2001) (finding that Plaintiff's use of over-the-counter pain relievers and mild palliative heat

was inconsistent with claims of severe pain supported by substantial evidence). The Eighth Circuit has routinely held that an ALJ may properly discount a claimant's subjective description of their symptoms when the alleged severity is inconsistent with a conservative treatment history. *See, e.g.*, *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998); *see also Rieffer v. Saul*, No. 1:19-CV-214 JAR, 2020 WL 7122363, at *5 (E.D. Mo. Dec. 4, 2020) ("[C]onservative treatment contradicts subjective allegations of disabling pain.").

Second, the ALJ found that Plaintiff had "declined referrals of physical therapy and pain management 'due to cost,' although she testified that she pays out of pocket to see her chiropractor." (Tr. at 20). The Court is certainly conscious of Plaintiff's cost concerns regarding such care. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) ("She took little medication considering the severity of her symptoms, though we note that financing her medication was often a problem."). But the ALJ may appropriately consider this decision by Plaintiff when assessing the severity of Plaintiff's chronic pain. *See Whitman v. Colvin*, 762 F.3d 702, 706 (8th Cir 2014) ("The ALJ properly considered Whitman's relative lack of medical care, including his failure to seek care from 'charity' provides, as relevant."); *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) ("The ALJ paid particular attention to the fact that Eichelberger cancelled several physical therapy appointments and that no physician had imposed any work-related restrictions on her.").

Third, and most importantly, the ALJ thoroughly reviewed Plaintiff's medical records before concluding she had addressed Plaintiff's chronic pain symptoms through the RFC. Plaintiff disputes the ALJ's conclusion that the medical records reveal "fairly routine findings." (Tr. at 20). But the ALJ cited numerous records where Plaintiff had "normal gait, negative straight leg raises, normal strength, no sensory deficits, and lumbar forward flexion to 40 degrees." (*Id.*). At the consultative physical examination, Dr. Horowitz observed a "steady gait with no assistive device

11

. . . , good coordination, no palpable spasms, normal sensation, a large S-curve to the thoracic and lumbosacral spine, no joint swelling or tenderness, able to squat and rise with moderate difficulty, heel and toe walk with ease, normal tandem walk, 5/5 lower extremity strength, limited lumbar and cervical range of motion, and positive straight leg raising to 70 degrees on the right." (*Id*. at 20, 419-428).

Plaintiff cites numerous records that are somewhat inconsistent with those identified by the ALJ, including some evidence that Plaintiff experienced tenderness and muscle spasms. (Doc. 19 at 6). Plaintiff did visit the emergency room once for her back pain, but only after she was "moving an armoire . . . and injured left side lower back." (Tr. at 377). Her primary care physician identified "significant structural issues that are contributing to her back pain." (*Id*. at 392).[3] But other reports by Plaintiff's treating physicians suggest Plaintiff may be exaggerating the severity of her symptoms. Plaintiff presented to her primary care provider on May 9, 2019 claiming she "hurts from head to toe most days." (*Id*. at 454). But Dr. Smith's examination revealed that Plaintiff seemed "alert, well appearing, and in no distress" with "no joint swelling or redness," and her "diffuse sort tissue soreness with palpation [was] out of proportion to what would be expected." (*Id.* at 455). Records from Plaintiff's chiropractor in May 2019 also indicate that Plaintiff could more easily perform activities because of less pain, less stiffness, greater range of motion, and better endurance (*Id.* at 499, 501), though the pain apparently later worsened. (*Id.* at 505).

To synthesize, there is somewhat inconsistent evidence in the record regarding the extent of Plaintiff's chronic pain. The ALJ considered Plaintiff's receiving conservative care and declining additional treatment before evaluating evidence from the consultative physical

---

[3] The Court notes that many of the visits in the record precede Plaintiff's alleged disability onset date of January 1, 2018, and Plaintiff has not identified any intervening change between those visits and her disability onset. *See Rieffer*, 2020 WL 7122363, at *4 ("The ALJ first found that the medical evidence and other evidence of record showed Plaintiff's physical complaints predated the alleged onset date by over a year and did not significantly worsen on or following that date.").

examination and treating physicians' medical records. The ALJ was not required to specifically cite each objective finding in the substantial medical record before reaching her conclusion that the RFC adequately addressed Plaintiff's chronic back pain. *See Black*, 143 F.3d at 386 (citation omitted) ("Although required to develop the record fully and fairly, and ALJ is not required to discuss every piece of evidence submitted . . . . An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."). Based on this record, the Court cannot say that the ALJ's RFC as it relates to Plaintiff's chronic pain "falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

Plaintiff's Medication Side Effects

An ALJ has a duty to consider the side effects of medications when assessing a claimant's credibility. *See Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010). Plaintiff argues that the ALJ did not "discuss the dosage, effectiveness, and side effects of medication." (Doc. 19 at 7). In her Function Report, Plaintiff expressed that certain medications had side effects of drowsiness. (Tr. at 257). At the hearing, Plaintiff did not volunteer any challenging side effects caused by her medications. Instead, on prompting from the ALJ, Plaintiff expressed her medications "make[] me tired. It all makes me tired. Nothing else than that, though." (*Id.* at 57). There is no other discussion at the hearing of medication side effects, and there appear to be no references in the medical record to Plaintiff's tiredness as it relates to her medication. Plaintiff never expressed that she cannot work due to medication side effects, and no treating physician identified the medication side effects as a reason Plaintiff cannot work. *See Christopher-Dell v. Colvin*, No. 4:13-CV-954 ACL, 2014 WL 4840692, at *10 (E.D. Mo. Sept. 29, 2014) ("Although it is true the ALJ did not discuss [claimant's] alleged sleepiness as a side effect, the medical record does not indicate that [claimant]

complained of this side effect to her physicians."); *see also Luking v. Berryhill*, No. 4:16-CV-1524 JAR, 2017 WL 4236988, at *5 (E.D. Mo. Sept. 25, 2017).

While the ALJ did not specifically discuss medication side effects, she referenced records suggesting Plaintiff experienced "significant improvement" with Lyrica and was "tolerating the medication well." (*Id.* at 20). The ALJ also discussed Plaintiff's psychiatric medications, which are described as part of "conservative and fairly minimal treatment." (*Id.*). In short, this Court sees no good reason to remand due to the ALJ's failure to discuss medication side effects or dosage when there is no evidence in the record suggesting that these matters affected Plaintiff's ability to work. *See Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (holding ALJ did not err by omitting medication drowsiness from RFC where no evidence suggested side effects were uncontrollable or restricted claimant's ability to work); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [claimant] must provide some indication that the ALJ would have decided different if the error had not occurred.").

<u>Plaintiff's Daily Activities</u>

The ALJ emphasized that Plaintiff's "level of independence and functional ability," as evidenced by her daily activities, was "inconsistent with [Plaintiff's] central allegation of debilitating pain." (Tr. at 21). Plaintiff contends that the ALJ "failed to explain how Plaintiff's minimal daily activities translate to an ability to perform the exertional tasks required in work." (Doc. 19 at 9). Plaintiff devotes a substantial portion of her brief to this argument. (*Id.* at 7-11). The Commissioner responds that the ALJ properly considered Plaintiff's daily activities.

In the Eighth Circuit, an ALJ may consider any inconsistencies between allegations of debilitating pain and a claimant's daily activities. *See Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (citation omitted). The Eighth Circuit recently affirmed the decision of an ALJ who

considered, for example, that the claimant "lives alone, independently takes care of his personal needs, drives automobiles, shops, prepares meals, does his laundry, and occasionally attends church, among other activities." *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017); *see also Lawson v. Colvin*, 807 F.3d 962, 966 (8th Cir. 2015) (noting claimant performed household chores and took care of her personal needs). On the other hand, a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citation omitted), and "a claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment." *Dixon v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003) (citation omitted).

The ALJ recognized that Plaintiff "lives independently in an apartment, is independent in daily activities, drives a car . . . , drives to visit her mother several times a week, cares for her cat, enjoys reading and painting, prepares meals, and does various household chores, including laundry, dishes, and vacuuming." (Tr. at 21). The ALJ also cited Plaintiff's testimony that she drives 45 minutes to see and play with her granddaughter every Wednesday morning. (*Id.*). These are precisely the types of activities commonly recognized in the Eighth Circuit as potentially inconsistent with allegations of debilitating pain, and the ALJ did not contend that Plaintiff's ability to perform household chores by itself renders her capable of working full-time. *See Bryant*, 861 F.3d at 783. Instead, the ALJ appears to have discounted Plaintiff's subjective complaints after considering "both the extent of [Plaintiff's] daily activities and the independent medical evidence." *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (citation omitted).

Plaintiff quibbles with certain of the ALJ's characterizations of Plaintiff's daily activities. Plaintiff contends, for example, that she cooked for herself, but typically sandwiches or frozen dinners. Plaintiff also notes that she struggled with some household tasks and could only do laundry or dishes for about ten minutes before the pain became overwhelming. Finally, while

15

Plaintiff admits frequently driving 45 minutes to visit family, she adds that she would use a seat heater in the car to relieve back pain. At the hearing, Plaintiff testified that when she does clean her kitchen and living room, she may be "down for the next day or two, because [she] can't do nothing after that," and she has to "sit down every half hour" while doing these chores. (Tr. at 50).

But Plaintiff's characterizations themselves are not perfectly accurate. In her Function Report, Plaintiff described making breakfast, feeding her cat, giving her cat medication, showering, and straightening the house. (*Id.* at 252). As to cooking, Plaintiff does often eat sandwiches or frozen dinners but acknowledged cooking meatloaf or burgers once a week, and sometimes cooking for company. (*Id.* at 59, 253). Plaintiff also stated that it takes her "6-8 hours" to "clean[s] [her] entire apartment top to bottom" because of breaks due to pain, but otherwise described no issues dressing, bathing, caring for her hair, or feeding herself. (*Id.* at 252-53). She explained that she visits her mother two or three times per week and they sometimes go out for lunch "or maybe a little shopping." (*Id.* at 255).

In short, the ALJ did not state that Plaintiff's ability to perform basic household chores meant she could work full-time. If the ALJ had made such a finding, reversal and remand may have been appropriate. Instead, after considering the mixed evidence regarding Plaintiff's performance of various household tasks while living alone in an apartment and caring for a pet cat, the ALJ determined that Plaintiff's daily activities were inconsistent with allegations of disabling pain. This was an entirely appropriate finding supported by substantial evidence in the record as a whole and consistent with directly applicable Eighth Circuit precedent.

<u>Medical Opinions</u>

Though not addressed in Plaintiff's brief, the Court will also consider the ALJ's evaluation of the available medical opinion evidence. Because Plaintiff filed her claim for disability benefits

after March 27, 2017, the ALJ was required to evaluate such evidence in accordance with 20 C.F.R. § 404.1520c. This regulation provides that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will evaluate the persuasiveness of such opinions with supportability and consistency with other evidence in the record being the most important factors. 20 C.F.R. § 404.1520c(a)(2). The ALJ specifically identified this regulation in her opinion. (Tr. at 19).

Generally, the Court finds that the ALJ properly considered the available opinions and made a reasonable determination supported by substantial evidence. The ALJ addressed the opinion of state agency medical consultant Dr. John Duff, who determined in June 2018 that Plaintiff could perform light work with certain postural and environmental restrictions. The ALJ found this opinion "not fully persuasive" and determined additional restrictions were warranted in light of Plaintiff's fibromyalgia and chronic back pain. (*Id.* at 21). The ALJ did find the opinion of state agency psychological consultant Steven Akenson, Psy.D., "persuasive" because Dr. Akenson's findings "are consistent with the overall medical evidence . . . including the minimal mental health treatment of record, the routine mental status examinations of Dr. Peaco and others, and the [Plaintiff's] self-reported daily activities." (*Id.* at 21-22). *See Collins v. Kijakazi*, No. 6:20-CV-3237-MDH, 2021 WL 3909670, at *4 (W.D. Mo. Aug. 31, 2021) ("The new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified experts in Social Security disability evaluation.").

The ALJ then addressed the medical source statement from the ALJ's treating chiropractor, Daniel Jablonski, D.C., who opined that Plaintiff could only stand or sit for 30 minutes each in a workday. The ALJ found this opinion "not persuasive" since Plaintiff already held a job requiring her to stand for more than 30 minutes and the opinion was internally consistent. (*Id.*). These are

appropriate bases for the ALJ to partially discount Dr. Jablonski's medical source statement. *See Wagner v. Astrue*, 499 F.3d 842, 850 (8th Cir. 2007) (citation omitted) ("[P]hysician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies.").

Finally, the ALJ addressed the opinion of Dr. Chad Smith, Plaintiff's primary care provider. The ALJ criticized this opinion on the grounds that Dr. Smith did not explain the basis for his opinions on the form, his findings were inconsistent with those of Dr. Horowitz, and the record offered no basis for manipulative limitations and extreme reaching restrictions assessed by Dr. Smith. (Tr. at 22). The Court also notes that Dr. Smith wrote on the form that he was "not sure how to answer these questions" and declined to fill in the blank space provided for "objective clinical findings which could reasonably be expected to cause [Plaintiff's] limitations." (*Id*. at 451-53). Essentially, Dr. Smith completed a checklist form that had minimal elaboration and, according to the ALJ, conflicted with other evidence in the record. The Eighth Circuit has consistently held that "an ALJ can give limited weight to a physician's conclusory statements." *Grindley v. Kijakazi*, 9 F.4th 622, 632 (8th Cir. 2021). The Eighth Circuit has also recognized that an ALJ may properly discount a physician's conclusory opinion provided on "checklist forms" with "little to no elaboration." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). Therefore, the Court finds that the ALJ reached her RFC after performing a comprehensive and cogent review of the applicable medical opinions and consultative examinations.

## VII.   CONCLUSION

After careful consideration, this Court will affirm the decision of the ALJ because such decision is supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018). First, the ALJ properly evaluated Plaintiff's use of

assistive devices, chronic pain symptoms, medication side effects, and daily activities when establishing the RFC. As to each issue, the ALJ considered factors and evidence consistent with SSA regulations and Eighth Circuit guidance. Second, the ALJ reviewed each of the available medical opinions and provided legitimate assessments of their persuasiveness based upon such opinions' consistency and supportability.

As the ALJ acknowledged, it appears that Plaintiff suffers genuinely severe impairments which preclude her from performing certain forms of work. The Court notes that the ALJ established an RFC limiting Plaintiff to light work with numerous restrictions based on her documented medical history and description of the severity of her symptoms. An impartial VE testified that Plaintiff could obtain full-time work in the national economy despite such limitations. Therefore, because the ALJ's opinion is supported by substantial evidence in the record as a whole and falls within the "available zone of choice," the Court will affirm the decision. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint (Doc. 1) is **DISMISSED with prejudice**. A separate Judgment will accompany this Memorandum and Order.

Dated this 8th day of November, 2021.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

19